IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KOUNG H. CHINN,

      Petitioner,

  v.

A.P. KANE, Warden,

      Respondent.
                                        /

No. C 05-3425 CW

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Koung Chinn, proceeding <u>pro se</u>, has filed a petition for a writ of habeas corpus pursuant to title 28 U.S.C. § 2254, challenging as a violation of his constitutional rights the denial of parole by the California Board of Parole Hearings (Board).[1]  Respondent Anthony Kane has filed an answer.  Petitioner has filed a traverse.  Having considered all of the papers filed by the parties, the Court DENIES the petition.

BACKGROUND

On April 11, 1992, Petitioner went to the apartment of Bopha Kim, his child's mother.  Kim's brother testified that he heard Petitioner and Kim arguing in her bedroom and that Petitioner was demanding to see his child.  The brother heard two small pops and went to the bedroom.  He saw Petitioner holding a small pistol.  He saw Petitioner try to shoot Kim again, but he believed the gun

---

[1] The Board of Prison Terms was abolished effective July 1, 2005, and replaced with the Board of Parole Hearings.  Cal. Penal Code § 5075(a).

jammed or was empty because he heard a click.  Petitioner fled the scene and was later arrested in New York.  An autopsy report showed that Kim was killed by two gunshot wounds to her head.

Petitioner plead guilty to second-degree murder and was sentenced to fifteen years to life.  The court also found that Petitioner was armed during the commission of the crime but stayed the four year arming enhancement.  Petitioner started serving his sentence on December 1, 1992, and his minimum eligible parole date was July 10, 2002.

Since his incarceration, Petitioner has had a primarily positive record.  His only two disciplinary infractions were a rules violation report in April, 1993 for an identification incident and a counseling memorandum in July, 1996 for failing to report to work.  He completed a vocational landscaping course in 1996, an entrepreneur development course and a fatherhood class in 2000, and a self-help "Impact Workshop" in 2002.  Petitioner worked as a dental technician in 2001 and received a laudatory chrono for his work in May, 2001.  At the time of the hearing he was working in the vocational print shop and completing a graphic arts course.

On May, 25, 2004, Petitioner attended his second parole suitability hearing before the Board.  In addition to Petitioner's prison record, the Board considered the following evidence. Petitioner had one prior arrest and conviction for carrying a loaded firearm.  He was sentenced to twelve months of probation. Petitioner had no juvenile record but admitted to being involved with a gang prior to 1989.  Prior to his conviction, Petitioner had graduated from high school and completed two and a half years of

2

1 college.  However, Petitioner scored at a 5.2 grade level on a test
2 administered at the prison.
3    The Board considered a report by Petitioner's correctional
4 counselor, who opined that Petitioner would pose a moderate to low
5 degree of threat to the public if released from prison.  The
6 counselor found that, although Petitioner "remained disciplinary
7 free for the last ten years" and "has programmed well at work," the
8 commitment crime "remains vicious and appears to be a crime of
9 passion."  Respondent's Exhibit 5 at 3.
10    A 2001 mental health evaluation noted that Petitioner was
11 "genuinely remorseful and repentant" and opined that he "would be
12 considered of less than average violence potential within a
13 controlled setting" and in the community, "his violence potential,
14 since he has no history of any other violent crimes, is estimated
15 to be no more than the average citizen in the community."
16 Respondent's Exhibit 6 at 4.  The evaluation also predicted that
17 Petitioner "is going to need support within the community" and
18 suggested that he "receive ongoing supportive therapy to assist him
19 in integrating his guilt about the commitment offense."  Id.
20    The Board also read an April, 2003 letter from Petitioner's
21 sister, Jennifer Chinn, who said that he would be welcome to stay
22 with her family in Los Angeles.  The letter stated, in part, "My
23 husband and I will support you, everything, place to stay, a car,
24 food, and my husband will help you find a job or a living."
25 Respondent's Exhibit 4 at 20.  The Board noted that Petitioner did
26 not have any job offers in Los Angeles.  Further, Petitioner
27 conceded that he likely would be deported to Cambodia if released

3

on parole.  Petitioner presented two letters dated December 25, 2002, from his uncle and cousin in Cambodia, stating that they would employ him at the restaurant they owned because they needed somebody who spoke English.  The Commissioner discredited the letter, telling Petitioner that he needed to know "an address [and] the name of the restaurant."  Id. at 25.  Further, the Commissioner noted that the letter was two years old and did not explicitly offer Petitioner a place to live.  Petitioner informed the Commissioner that he had given a more recent letter with the address and a telephone number to his corrections counselor.

After brief deliberation, the Board panel concluded that Petitioner was not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released and issued a two-year denial of parole.  In support of its decision, the Board stated that the commitment offense "was carried out in an especially violent and cruel manner" and noted that the crime left Petitioner's daughter without a mother. Further, the Board found that Petitioner "lack[ed] realistic parole plans" citing the perceived deficiencies in the letters regarding his plans in Cambodia.  Id. at 33-34.

The Board also found that "it is not reasonable to expect that parole would be granted at a hearing during the following two years."  Id.  In the interim, the Board suggested that Petitioner seek "additional self-help to discuss, understand, and cope with stress in a non-destructive manner" and to clarify his parole plans.  Id.

On September 15, 2004, Petitioner filed in Los Angeles County

4

1 Superior Court a petition for a writ of habeas corpus challenging
2 the Board's decision and asserting that the denial of parole
3 violated his plea agreement.  In its reasoned opinion, the court
4 denied the petition, finding that some evidence supported the
5 Board's denial of parole.  However, it held that no evidence
6 supported the Board's finding that the commitment offense was
7 especially violent and cruel because it was carried out in a
8 dispassionate and calculated manner.  The court also found that
9 "Petitioner entered into an <u>indeterminate</u> plea agreement, to which
10 the Board was not a party, that provided for a minimum sentence of
11 fifteen years and a maximum of <u>life</u>."  Respondent's Exhibit 7 at 2
12 (emphasis in original).  Therefore, the court found that
13 Petitioner's claim based on his plea agreement was without merit.
14 After the court of appeal and California Supreme Court denied his
15 petition summarily, Petitioner brought a federal habeas petition in
16 this Court.

## LEGAL STANDARD

18 Because this case involves a federal habeas corpus challenge
19 to a State parole eligibility decision, the applicable standard is
20 contained in the Antiterrorism and Effective Death Penalty Act of
21 1996 (AEDPA).  <u>McQuillion v. Duncan</u>, 306 F.3d 895, 901 (9th Cir.
22 2002).  Under AEDPA, a district court may not grant habeas relief
23 unless the State court's adjudication of the claim: "(1) resulted
24 in a decision that was contrary to, or involved an unreasonable
25 application of, clearly established Federal law, as determined by
26 the Supreme Court of the United States; or (2) resulted in a
27 decision that was based on an unreasonable determination of the

5

facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000). A federal court must presume the correctness of the State court's factual findings. 28 U.S.C. § 2254(e)(1).

Respondent concedes that Petitioner has exhausted his State remedies by filing the petition for a writ of habeas corpus in the California Supreme Court. Where, as here, the highest State court to reach the merits issued a summary opinion which does not explain the rationale of its decision, federal court review under § 2254(d) is of the last State court opinion to reach the merits. Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000). In this case, the last State court opinion to address the merits of Petitioner's claim is the opinion of the Los Angeles County Superior Court.

## DISCUSSION

I. Jurisdiction

Respondent argues that the Court does not have subject matter jurisdiction because State parole matters do not constitute a federal question on the grounds that denial of parole does not affect a constitutionally protected liberty interest. Respondent relies on In re Dannenberg, 34 Cal. 4th 1061 (2005), for the proposition that California prisoners have no liberty interest in parole and thus have no federal due process rights in connection with parole eligibility. However, the Ninth Circuit has rejected this contention. Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006). Therefore, the Court has subject matter jurisdiction under 28 U.S.C. § 2254 to decide whether

6

Petitioner's Fourteenth Amendment right to due process was violated by the Board's determination that he was not suitable for parole.

II. Due Process Claim

Petitioner asserts that his due process rights were violated by the Board's decision because no evidence supports its finding that he is unsuitable for parole. Because California prisoners have a constitutionally protected liberty interest in release on parole, they cannot be denied a parole date without the procedural protections necessary to satisfy due process. McQuillion, 306 F.3d at 902. A parole board's decision must be supported by "some evidence" to satisfy the requirements of due process. Superintendent v. Hill, 472 U.S. 445, 455 (1985); McQuillion, 306 F.3d at 904; Morales v. California Dep't of Corrections, 16 F.3d 1001, 1005 (9th Cir. 1994), rev'd on other grounds, 514 U.S. 499 (1995). The evidence underlying the board's decision must have some indicia of reliability. McQuillion, 306 F.3d at 904; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987).

The California court rejected the Board's finding that Petitioner's commitment crime was especially violent and cruel. Nonetheless, the court noted that the facts of the crime "were enough to establish more than the minimum necessary for a conviction of second-degree murder." Respondent's Exhibit 7 at 1. Further, the court found support for the Board's conclusion that Petitioner "lacks realistic parole plans," because the letters from his family in Cambodia "were two years old and not specific regarding potential living arrangements." Id. at 2. Based on

7

these findings, the court found that there was "'some evidence' to support the Board's conclusion." Id.

Petitioner argues that the Board's finding that the nature of his offense outweighed the positive aspects of his profile was not supported by the evidence. Petitioner cites Biggs v. Terhune, 334 F.3d 910, 915-16 (9th Cir. 2003), in support of his argument that "given his over six years of disciplinary free prison performance and his on-going positive programming, the gravity of his offense and his previous criminal history can no longer provide the some evidence needed to support a parole denial decision." Petition at 11.

In Biggs, the Ninth Circuit found that parole denial based solely on the gravity of the commitment offense can initially satisfy due process requirements, and that the "some evidence" standard could be satisfied by the Board's consideration of the gravity of the offense. However, in dicta, the Biggs court held that courts may also consider the parole board's decision-making process over time: "The Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered. . . . A continued reliance in the future on an unchanging factor . . . runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Biggs, 334 F.3d at 916-17.

Nevertheless, the Board's decision at issue here does not rise to a due process violation. Although the Ninth Circuit has stated that, over time, continuous denial of parole based on the commitment offense could result in denial of due process, see id.

8

at 916-17, it has not specified the number of denials or the length of time served beyond the minimum sentence that would constitute a due process violation. District courts which have granted habeas petitions challenging the Board's decisions addressed situations involving more denials of parole than in the instant case. See e.g., Irons v. Carey, 358 F. Supp. 2d 936, 947 (E.D. Cal. 2005) (finding due process violation in denial of parole at fifth parole suitability hearing after petitioner had served sixteen years of a seventeen-years-to-life sentence for second degree murder with a two-year enhancement for use of firearm where all factors indicated suitability for parole), rev'd, 479 F.3d 658 (9th Cir. 2007) (given the egregiousness of the commitment offense, due process not violated when Board deemed petitioner unsuitable for parole prior to expiration of his minimum term); Johnson v. Finn, 2006 WL 195159, *12 (E.D. Cal.) (finding due process violation in denial of parole at twelfth parole suitability hearing after petitioner had served twenty-four years of sentence of life with the possibility of parole for first degree murder where all factors indicated suitability for parole).

    Further, the Board also found that Petitioner lacked a realistic parole plan. Petitioner does not challenge this finding, which also provides some evidence to support the Board's denial. Instead, Petitioner argues that he is entitled to parole "if he either has developed marketable skills while in prison or has acceptable parole plans." Traverse at 21. However, Petitioner misinterprets California Code of Regulations title 15, § 2402(d), which simply provides examples of circumstances that

9

1  "tend to show that the prisoner is suitable for release."  The
2  provision makes clear that the examples "are set forth as general
3  guidelines" and "the importance attached to any circumstance or
4  combination of circumstances in a particular case is left to the
5  judgment of the panel."  Id.

6  Accordingly, the superior court's finding that some evidence
7  supported the Board's finding that Petitioner was unsuitable for
8  parole was not contrary to, nor an unreasonable application of,
9  clearly established federal law.  However, if Petitioner
10 establishes a realistic parole plan and continues his positive
11 behavior in prison and the Board continues to deny parole based
12 solely upon unchanging facts such as the nature of the crime, the
13 Board's decision may eventually amount to a due process violation.
14 See Biggs, 334 F.3d at 916-17.

15 II.  Violation of the Plea Agreement

16 Petitioner also argues that he was "unconstitutionally denied
17 [an] owed reciprocal benefit from his plea agreement."  Petition
18 at 14.  He argues that denial of parole denied him "his owed
19 'reciprocal benefit' of 'lessened punishment.'"  Id. at 15.
20 However, Petitioner has not demonstrated that any promise in his
21 plea agreement was breached.

22 Petitioner cites People v. Collins, 21 Cal. 3d 208 (1978),
23 for the proposition that when accepting a plea bargain, "the
24 defendant agrees to plead guilty in order to obtain a reciprocal
25 benefit, generally consisting of a less severe punishment than
26 that which could result if he were convicted of all offenses
27 charged."  Id. at 214 (quoting People v. Orin, 13 Cal.3d 937, 942

10

(1975)). However, Petitioner does not allege that the sentence he received was the same as or greater than the sentence he would have received if convicted at trial, nor would this be the proper forum for raising that challenge.

Petitioner has not demonstrated that the denial of parole after he served less than twelve years of his fifteen-year-to-life sentence breached any promise made in his plea agreement. Further, Petitioner does not allege any constitutional violation that would support the grant of a writ of habeas corpus.

## III. Bias

Finally, Petitioner alleges that the Board's decision to deny him parole was based on unlawful bias against those convicted of murder. Petitioner did not raise this claim in his state habeas petition. Therefore, it is unexhausted. See 28 U.S.C. § 2254(b). It is denied as without merit.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The Clerk of the Court shall enter judgment and close the file.

IT IS SO ORDERED.

Dated: 6/14/ 07

CLAUDIA WILKEN
United States District Judge

11

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHINN,<br><br>        Plaintiff,<br><br>  v.<br><br>KANE et al,<br><br>        Defendant. | Case Number: CV05-03425 CW<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on June 14, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Elizabeth S. Kim
State Attorney General's Office
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102-7004

Koung H. Chinn H-57280
CTF -Soledad
P.O. Box 689
Soledad, CA 93960-0689

Dated: June 14, 2007

Richard W. Wieking, Clerk
By: Sheilah Cahill, Deputy Clerk